IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 93-127 |
| | : | |
| GRADY JACKSON, JR. | : | |

**MEMORANDUM OPINION**

**Schmehl, J. /s/ JLS** May 17, 2021

    Mr. Grady Jackson, Jr., Motions for Compassionate Release, and requests that the Court releases him from his halfway house to home confinement. Upon receiving Mr. Jackson's first Motion for Compassionate Release, the Court referred the matter to the Federal Defender's Office who took representation of Mr. Jackson. The Defenders then filed a Motion for Compassionate Release on his behalf. The Government opposes the Motions by arguing that the Court should defer judgment as to whether Mr. Jackson should be released to the Bureau of Prisons who has authority to release him, and is in a better position to evaluate his risk level and his appropriate place and degree of confinement. Below, I deny Mr. Jackson's Motions for Compassionate Release because I agree that the BOP is in a better position to determine if Mr. Jackson should complete his sentence in the halfway house or in home confinement.

**I.    FACTUAL BACKGROUND**

    Mr. Jackson was convicted of armed carjacking and carrying a firearm during and in relation to a crime of violence in 1993. (ECF #120, Gov. Response, at 2-3.) He was sentenced to a term of 240 months' imprisonment, to be followed by 3 years of supervised release. (ECF #119, Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), at 3.) He was

released from prison to a halfway house on January 26, 2021, and his statutory release date is January 26, 2022. (*Id.*)

Mr. Jackson is 58 years old, has type II diabetes, asthma, high blood pressure, high cholesterol, severe arthritis, and is recovering from prostate cancer. (*Id.* at 4.) Mr. Jackson contracted COVID-19 while incarcerated in October 2020, and it was deemed resolved shortly after. (ECF #120 at 4-5.) He was also reprimanded a total of 24 times while incarcerated including the following since 2016: interfering with a security device, fighting, possessing an unauthorized item, lying or falsifying, being in an unauthorized area, being unsanitary or untidy, and three instances of refusing to work/program assignment. (*Id.* at 3-4.)

Mr. Jackson argues that his medical conditions coupled with the conditions in the halfway house puts him at a high risk of an adverse outcome from COVID-19. (ECF #119, at 5.) He states that members of the halfway house are not tested or screened when first admitted to the halfway house, and that he shares a room with three other individuals. (*Id.*) Therefore, he should be released from the halfway house to live with his mother where he would not be at such a high risk from COVID-19. In response, the government argues that the Bureau of Prisons is in a better position to evaluate Mr. Jackson's risk level, need for the halfway house, and the BOP has the authority to release him upon request.

## II. LEGAL AUTHORITY

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The relevant Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In application note 1 to the policy statement, the Commission identifies "extraordinary and compelling reasons" that may justify compassionate release as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,

3

> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant
>
> > (i) is at least 65 years old;
> >
> > (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and
> >
> > (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Generally, the defendant has the burden to show circumstances that meet the test for compassionate release. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

Accordingly, if a defendant's medical condition is found to be the type of condition that puts a defendant at the increased risk of an adverse outcome from COVID-19, a court must then analyze the factors under section 3553(a) and the Sentencing Commission's policy statement. Section 3582(c)(1)(A) requires a court to consider the "factors set forth in section 3553(a) to the

extent they are applicable" before a sentence may be reduced. These factors require a determination of whether the sentence served "reflect[s] the nature and circumstances of the offense and the history and characteristics of the defendant;" "reflect[s] the seriousness of the offense;" "promote[s] respect of the law;" and "afford[s] adequate deterrence to criminal conduct." The statute also instructs a court to consider the Sentencing Commission's policy statement, which allows a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

### III. ANALYSIS

This analysis requires the Court to first determine whether Mr. Jackson presents a danger to the community if he were to be released, and then to assess whether his medical conditions, familial circumstances, or any other reasons justify release. The government, in essence, concedes that his medical conditions support release, but argues that the Court should defer the decision to release Mr. Jackson to the Bureau of Prisons because of his criminal history, infractions while incarcerated, and the BOP is better suited to determine his appropriate place and degree of confinement.

Mr. Jackson has a long criminal history. He has a history of thefts, a robbery, armed carjacking, and violating his parole and probation. Then while in custody on the present offenses he was reprimanded a total of 24 times, including the following since 2016: interfering with a security device, fighting, possessing an unauthorized item, lying or falsifying, being in an unauthorized area, being unsanitary or untidy, and three instances of refusing to work/program assignment.

5

The BOP has authority to release Mr. Jackson from his halfway house to home confinement if it is practical, he presents a low risk level, and has a lower need for the halfway house. *See* 18 U.S.C. § 3624(c)(2). The BOP could permit Mr. Jackson to serve his last six months in home confinement rather than at the halfway house. *Id.* Given his criminal history, infractions while incarcerated, the fact that he is in halfway house and near completion of his sentence, I believe the government's position represents the best interests of justice. The BOP is in a much better position to evaluate Mr. Jackson's health, risk, and need for the halfway house or preparedness for home confinement. Furthermore, COVID-19 vaccines are widely distributed at this time, which allows Mr. Jackson to obtain a vaccine almost wherever he wants one, and thereby he can substantially reduce his risk of an adverse outcome from COVID-19. *See* CENTER FOR DISEASE CONTROL AND PREVENTION, COIVD-19 Vaccines, https://www.cdc.gov/coronavirus/2019-ncov/vaccines /your-vaccination.html ("Everyone 16 years of age and older is now eligible," and "Covid-19 Vaccines are Widely Available").

## IV.  CONCLUSION

For the reasons stated above, the Court denies Mr. Jackson's Motions for Compassionate Release, and he should formally request his release from the halfway house and placement to home confinement to the Bureau of Prisons at the appropriate time. If denied by the Bureau of Prisons, Mr. Jackson has the opportunity to file another Motion for Compassionate Release.